UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WING SHING PRODUCTS (BVI) CO. LTD.,

       Plaintiff,

-against-            06 Civ. 3522 (RJH)

                 **MEMORANDUM OPINION**
                   **AND ORDER**

SUNBEAM PRODUCTS, INC. and
SIMATELEX MANUFACTORY CO., LTD.,

       Defendants.

---

Richard J. Holwell, District Judge:

  Plaintiff Wing Shing brings this action against defendants Sunbeam and Simatelex for infringement of a patented coffee maker design. The matter now comes before the Court on defendants' motions for summary judgment. For the reasons stated below, those motions are granted. Simatelex's motion to dismiss for lack of personal jurisdiction is denied as moot.

## BACKGROUND[1]

  Plaintiff Wing Shing, a British Virgin Islands corporation based in Hong Kong, owns United States Design Patent No. D348,585 ("the '585 patent") for the ornamental design of a coffeemaker. (Def. 56.1 ¶ 4.) Defendant Sunbeam is a Delaware corporation that sells coffee makers under the MR. COFFEE brand. (Def. 56.1 ¶¶ 1-2.) Defendant

---

[1] The facts in this section are drawn from the parties' Rule 56.1 submissions and from the evidence submitted by the parties if not included in the 56.1 submissions. Unless otherwise indicated, the facts are not in dispute. Sunbeam's 56.1 submission is cited as "Def. 56.1" and Wing Shing's response submission is cited as "Pl. 56.1." Sunbeam's summary judgment brief is cited as "Def. Br." and Wing Shing's opposition is cited as "Pl. Opp."

Simatelex is a company located in Hong Kong that manufactures and sells coffee makers for Sunbeam.  (Def. 56.1 ¶ 5.)

The subject of this action is a line of MR. COFFEE automatic coffee-making devices called the "AR series," which defendants manufactured and sold between 2001 and 2006.  (Def. 56.1 ¶¶ 68-85.)  The AR series included three primary designs, the most popular of which, the "AR 10/12," accounted for more than 85% of total AR sales.[2]  (Def. 56.1 ¶ 64, 84.)  There were also two less popular designs: the "AR 4/5" and the "2004 AR." (Def. 56.1 ¶¶ 79-83.)  Wing Shing accuses the entire AR series of infringing the '585 patent, (Compl. ¶ 13), though the infringement analysis in its opposition papers focuses exclusively on the AR 10/12.  (Pl. Opp. at 13-19.)

These parties have litigated issues related to the '585 patent before.  This Court previously affirmed, in relevant part, an order by the Bankruptcy Court finding that Sunbeam had infringed the patent by selling a different line of devices, known as the "AD series." *Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.*, 311 B.R. 378 (S.D.N.Y. 2004), *aff'd*, 153 F. App'x 703 (Fed. Cir. 2005) ("*Wing Shing I*").  MR. COFFEE, which Sunbeam acquired in 1998, and Wing Shing collaborated on the design for the AD series in 1992, and Wing Shing thereafter manufactured the ADs for sale under the MR. COFFEE brand.  Soon after the parties had agreed on the design, Wing Shing patented it without informing MR. COFFEE.  When Sunbeam decided some years later to switch to Simatelex as its manufacturer, Wing Shing initiated its infringement claim.  *Wing Shing I*, 311 B.R. at 385-87.

---

[2]Plaintiff contends that what defendants call the "AR 10/12 design" actually conflates two separate designs: a 10-cup design and a 12-cup design.  Plaintiff cites no evidence for this proposition, (Pl. 56.1 ¶ 65), and, in any event, does not point to any differences between the two designs that would affect the infringement analysis.  For that reason, the court adopts defendants' designation of the "AR 10/12 design." (Def. 56.1 ¶¶ 65-67.)

2

Because the '585 patent explicitly patented the AD design, Sunbeam did not argue non-infringement in *Wing Shing I*, but instead sought unsuccessfully to prove that it had co-invented the '585 design. *See id.* At least one model from the AR series (the subject of this action) already existed during the late stages of the *Wing Shing I* litigation and was referenced by Sunbeam as a non-infringing alternative to the AD series, but Wing Shing did not accuse the AR of infringement at that time. (Pl. 56.1 ¶¶ 104 – 21.) Wing Shing first provided notice that the AR infringed on October 7, 2005, (Pl. 56.1 ¶ 137; Llewellyn Decl. Ex. AG at 14-15), and initiated this action in May 2006.

The Court denied defendants' original summary judgment motions without prejudice and stayed this action pending issuance of the *en banc* decision in *Egyptian Goddess, Inc. v. Swisa, Inc.*, which portended significant revision of the standard for design patent infringement. *See* 256 Fed. App'x. 357, 357-58 (Fed. Cir. 2007). The parties renewed and re-briefed the motions after the Federal Circuit issued its now-seminal opinion. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008).

Sunbeam advances four independent grounds for summary judgment: invalidity of the '585 patent; collateral estoppel; non-infringement; and laches. Simatelex joins all of these arguments except invalidity. Because the Court finds as a matter of law that the accused devices do not infringe the '585 patent, it need not address defendants' other arguments.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the evidentiary record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine if "a reasonable jury" could decide it in favor of the non-movant. *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the suit under controlling law. *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). The movant bears the burden to show that no genuine issue of material fact exists. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). For summary judgment purposes, all evidence is to be construed in the light most favorable to the non-movant, and every justifiable inference must be drawn in that party's favor. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006). In general, infringement in a design patent case is a question of fact that the patentee must prove by a preponderance of the evidence. *L.A. Gear v. Thorn McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993). Where no reasonable fact-finder could conclude that the patentee has met this burden, however, summary judgment is appropriate. *See Egyptian Goddess*, 543 F.3d at 679.

## DISCUSSION

A.  Egyptian Goddess

To determine if an accused object infringes a design patent, courts have traditionally undertaken a familiar two-step approach: first, construing the patent claim to determine its scope; and second, comparing the construed claim to the accused design to determine whether they are "substantially the same." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). In *Egyptian Goddess*, the Federal Circuit significantly altered both steps in the analysis. First, the court strongly discouraged the construction of a design patent through a detailed verbal description of the claimed design. *Id*. at 679.

4

Unlike utility patents, which ordinarily include textual claims requiring detailed construction, design patents are typically claimed only as shown in drawings.  For this reason, *Egyptian Goddess* makes it "clear that the [trial] court is not obligated to issue a detailed verbal description of the design" and, indeed, warns courts of "the risks entailed in such a description."  *Id*. at 679-80.  Though district courts may still exercise their discretion to point out relevant "features of the claimed design as they relate to the accused design and the prior art," the general rule is now that "illustration . . . is its own best description." *Id*. at 679-80 (quoting *Manual of Patent Examining Procedure* § 1503.01 (8th ed. 2006)).  District courts following *Egyptian Goddess* have generally relied on patent drawings to construe design claims.  *See, e.g., Arc'teryx Equip., Inc. v. Westcomb Outerwear, Inc.*, No. 07-cv-59, 2008 WL 4838141, at *2 (D. Utah Nov. 4, 2008); *Chef'n Corp. v. Trudeau Corp.*, No. C08-01135 (MJP), 2009 WL 1564229, at *4 (W.D. Wash. June 4, 2009); *HR U.S. LLC v. Mizco Int'l., Inc.*, No. CV-07-2394 (DGT)(JO), 2009 WL 890550 (E.D.N.Y. Mar. 31, 2009).  This Court will follow suit and construes Wing Shing's claim as the ornamental design for a coffeemaker, as shown in figures 1 through 7 of the '585 patent.  (Llewellyn Decl. Ex. A.)

*Egyptian Goddess* also significantly changed the analytical framework for comparing the claimed design to the accused design to determine whether there has been infringement.  Previously, the Federal Circuit prescribed a two-pronged test.  Plaintiffs had to satisfy the hoary "ordinary observer" test set down in *Gorham v. White*, 81 U.S. 511 (1871), by proving that the patented design and the accused design would appear substantially similar to "the eye of the ordinary observer;" *and* plaintiffs also had to prove that the accused design appropriated the patented design's "points of novelty"—the

5

innovative features that distinguished it from the prior art. *Egyptian Goddess*, 543 F.3d at 670-71. *Egyptian Goddess* struck the "points of novelty" test from the framework, but incorporated its regard for the prior art into a new, enhanced version of the "ordinary observer" standard. Now, the test for design patent infringement consists of a single inquiry: "whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." *Id*. at 672.

The Federal Circuit abandoned the separate "points of novelty" prong because it proved ill-suited to all but the simplest cases. The test required identification of every "novel" feature in a patent, and where moderately complex designs were at issue, this subsidiary analysis often sidetracked courts and fact-finders from the salient question of "whether the accused design . . . appropriated the claimed design *as a whole*." *Id*. at 677 (emphasis added). Application of the test raised such nettlesome and ultimately distracting issues as whether a new combination of old design features could constitute one or more "points of novelty." *Id*. And defendants sometimes exploited the points of novelty analysis to argue that an accused design that was substantially identical to the patented design was nonetheless non-infringing simply because it did not appropriate a particular, arguably "novel" detail. *Id*.

In place of this onerous and often unproductive analysis, the court decided to fold the essence of the points of novelty test, with its focus on the degree to which the patented design departed from the prior art, into the ordinary observer test. Rather than parse the "novelty" of individual design elements, courts and fact-finders should now ask whether the two designs in question would appear "substantially the same" to an ordinary observer who is already familiar with the prior art. *Id*. The court was careful to note that

6

this qualified ordinary observer standard serves many of the same purposes of the two-pronged approach it superceded. *Id*. at 678. Like the "points of novelty" test, the *Egyptian Goddess* standard is engineered to avoid the anomalous result where a design that simply embodies a piece of prior art is found to infringe. *Id*. But instead of addressing this problem by requiring an impractical determination of whether the accused device copies the "novel" aspects of a design patent, the law now endows its hypothetical ordinary observer with the knowledge and competence to distinguish between the patented object and its predecessors. As a result, if the patent and the prior art are particularly close, the scale of comparison between the accused and patented designs shrinks. *See id*. at 676 ("When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important…"). Differences between the claimed design and the prior art clearly remain central to this analysis; however, unlike in the old approach, those differences are not examined in isolation for their "novelty." *Id*. at 678.

*Egyptian Goddess* further explained that consideration of prior art is not required in every case, but only where the accused and claimed designs appear "substantially the same" in the first instance:

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer . . . . In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to

7

>be substantially the same will benefit from a comparison of the claimed
>and accused designs with the prior art….

*Id*. at 678; *see HR U.S. LLC*, 2009 WL 890550, at *10 ("a plaintiff must, as a threshold matter, show that the claimed and accused designs are not 'plainly dissimilar'").  In other words, there are two levels to the infringement analysis: a level-one or "threshold" analysis to determine if comparison to the prior art is even necessary, and a second level analysis that accounts for prior art in less obvious cases.

      B.      Side-by-Side "Threshold" Analysis

Sunbeam argues that the '585 patent and the primary accused device—the AR 10/12—are so plainly dissimilar that, even without considering any prior art, no reasonable fact-finder could conclude that they would appear "substantially the same" to an ordinary observer.  (Sunbeam Br. at 17, 19-21.)  The argument is not without merit.  The two designs are pictured below:

      '585 Patent                        AR 10/12 (Accused)

 

Two major differences between the designs are apparent.  First, they have different bases: the '585 has a "bullnose" base—it is flat with a rectangular cross section up to the tip, where the top and bottom meet on a curve—while the AR 10/12 has a smooth base that

8

slopes gradually from the heating plate.  The designs also have dramatically different tops: the '585's is flat, whereas the AR's has a circular indent partially overhung by the lid to the water reservoir.  As Sunbeam points out, these differences come at "focal points" in the designs: the top and base are the most visually commanding features of a coffeemaker, along perhaps with the brew basket.  (Sunbeam Br. at 24.)  At least one district court applying *Egyptian Goddess* has granted summary judgment without considering prior art where two designs differed primarily at one highly significant feature.  *See Minka Lighting, Inc. v. Maxim Lighting Intern, Inc.*, No. 3:06-CV-995-K, 2009 WL 691594, at *7 (N.D. Tex. Mar. 16, 2009).  Here, however, in the cluttered world of the drip-coffeemakers, it seems senseless to attempt to determine whether the "ordinary observer" would confuse two designs without looking to the prior art for a point of reference.  *See Egyptian Goddess*, 543 F.3d at 675 (quoting *Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (6th Cir. 1933) ("in a crowded art the composite of differences presents a different impression to the eye of the average observer . . . .")).  That "a purchaser of things of similar design," as the ordinary observer has been defined, *Applied Arts*, 67 F.2d at 430, could be deceived by the devices' similarities seems unlikely to the Court, but resolution of the inquiry would benefit from a concrete guidepost.  *See Egyptian Goddess*, 543 F.3d at 676-77 ("[I]t can be difficult to answer the question whether one thing is like another without being given a frame of reference").  Thus, though the Court acknowledges manifest differences in the overall appearance of the '585 and the AR 10/12, it turns to the prior art for context.

C.     Prior Art Comparisons

Defendants identify numerous examples of prior art. (Llewellyn Decl. Ex. D.) The primary piece is a coffeemaker called the "Accel" that Sunbeam itself developed in the early 1990's. (Def. 56.1 ¶¶ 37-39, 43.) The Accel and the '585 are pictured below:

'585 patent                              Accel (Prior Art)






The two designs are quite similar. Each has a large, smooth brew basket with a circular cross section that is partially encased by vertical shafts connecting the brew basket to the

10

base of the machine. Each has a similarly shaped recess for the carafe. Both designs call to mind the familiar white or black coffeemaker that graces most American kitchens. As will be noted, differences exist, but on the whole the claimed design when compared to the prior art bespeaks "a field . . . crowded with many references relating to the design of the same type of appliance." *See Egyptian Goddess*, 543 F.3d at 676 (quoting *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)). Accordingly, the scope of protection afforded the '585 patent falls in a "narrow range." *Id*.

As for dissimilarities, the base is surely the most prominent observable difference between the designs. In contrast to the "bullnose" on the '585, the Accel has an angular base with a trapezoidal cross section. To the extent the devices have distinct overall appearances, their different bases supply them. There are additional minor differences—the top of the Accel is slightly crowned, while the '585's is flat; and the water reservoir on the '585 extends further around the circumference of the brew basket—but these small details do not make nearly the visual impression that the distinct bases do.[3]

If the AR 10/12 (the accused design) had copied the '585's bullnose base—the one feature of the '585 that "departs conspicuously" from the prior art as depicted in the Accel—an inference of infringement might arise. *See id.* at 677 ("If the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design . . . ."). Instead, the AR 10/12 has its own, unique base, as is all the more apparent when viewed alongside both the '585 and the Accel:

---

[3] Also, in contrast to the Accel, the '585 has a distinctive water gauge along the left tower shaft. This feature, however, appears in at least one other piece of prior art, (Llewellyn Decl. Ex. D), and, perhaps for this reason, plaintiff does not emphasize it as a unique detail that links the '585 to the AR 10/12. (Pl. Opp. at 13-19.)

11

| Accel | '585 Patent | AR 10/12 |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Top View[4]

  

Because the AR 10/12 and the '585 differ at the very feature that primarily distinguishes the '585 from the Accel, no ordinary observer familiar with the Accel would be deceived into believing that the AR 10/12 and the '585 are the same.  Indeed, since it is difficult to tell the '585 and the Accel apart without focusing on their bases, it would be unreasonable to conclude that any observer capable of distinguishing those two machines would confuse the AR 10/12 and the '585, which also have different bases.  *See Egyptian Goddess*, 543 F.3d at 676 ("When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art.").  Additionally, the AR 10/12's unique lid configuration, which distances it from *both* the '585 and the prior art, further solidifies the conclusion that no genuine issue of material fact as to non-infringement exists here.

The Court remains mindful of the Federal Circuit's admonition to "analyz[e] the design as a whole" and not engage in an "element-by-element comparison" of the devices in question.  *See Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365,

---

[4] The photographs from this angle inaccurately create the impression that the Sunbeam products are wider at the top than in the body or base.  This results from parallax; the Sunbeam devices, like the '585 design, are the same width at the top and the base.  (Woodring Rep. ¶ 33.)

13

1372 (Fed. Cir. 2006).  Nonetheless, when the prior art is used as a "frame of reference," *Egyptian Goddess*, 543 F.3d at 677, the tops and bases of the devices in question dominate the overall visual impressions they make.  *See HR U.S. LLC v. Mizco Int'l., Inc.*, 2009 WL 890550, at *12 ("Summary judgment . . . is appropriate where specific ornamental features substantially impact the overall design . . . .").  As *Egyptian Goddess* itself recognized, where a particular design element sharply distinguishes, against the context of the prior art, the claimed design from the accused design, it is not error to focus on that element in the infringement analysis.  *See Egyptian Goddess*, 543 F.3d at 680-83 (summary judgment where accused design, in contrast to claimed design, contained fourth abrasive buffer).

Plaintiff argues that summary judgment cannot be granted here because, unlike in *Egyptian Goddess*, the AR 10/12 is "closer to the patented design than the prior art." Plaintiff contends that the AR 10/12 is closer to the '585 patent than the Accel because the "body" of the AR 10/12—the region from "the bottom of the lid to the top of the base"—is "substantially identical" to the body of the '585 design.  (Pl. Opp. at 18.)  The Court does not find this argument persuasive.  First, in focusing on the "body" of the design, plaintiff has chosen a frame of reference that conveniently excludes the salient points of comparison—the top and the base.  Under this framework, the Accel itself could be found to infringe, because to the layman's eye, its "body" is not readily distinguishable from the '585 patent.  This is exactly the type of absurd result that consideration of the prior art is meant to avoid.  *See Egyptian Goddess*, 543 F.3d at 678. Secondly, whether the accused device is "closer" to the patented design than to the prior art is not the controlling inquiry.  *Egyptian Goddess* notes that strong similarities between

14

the accused design and the prior art are an indication of non-infringement, but it does not require a mechanical determination—which in this case of "crowded art" would be impractical—that the accused device is "closer" to either the patent or the prior art. Instead, *Egyptian Goddess* requires an assessment of how the prior art will impact the ordinary observer's perception of the accused and claimed designs. *Id*. at 676, 678. Here, for example, though reasonable jurors might disagree on whether the AR 10/12 is "closer" to the Accel or the '585 patent (it is different than both), no reasonable juror could dispute that an ordinary observer familiar with the Accel would not believe the AR 10/12 to be the "same as" the '585 patent.

Plaintiff also argues that the testimony of its design expert should preclude summary judgment in defendants' favor. (Pl. Opp. at 13-16.) The mere existence of an opposing expert affidavit, however, does not foreclose summary judgment in an appropriate case. *See Egyptian Goddess*, 543 F.3d at 681-82 (granting summary judgment over opposing expert affidavit); *see also HR U.S. LLC*, 2009 WL 890550 at *13 ("[E]xpert testimony submitted by a plaintiff cannot create a material issue of fact where the visual comparison reveals that the alleged infringing product is not substantially similar . . . ."). Plaintiff's expert reports do not preclude summary judgment because they do not raise any genuine issues of material fact. Like plaintiff's brief, the reports focus mainly on the "body" of the AR 10/12, a perspective that, as already noted, is problematic. (Woodring Supp. Rep. ¶ 10.) When the expert does venture to address the tops and bases of the accused and claimed designs, he simply denies the existence of patent dissimilarities. (Woodring Rep. ¶ 32.) Consequently, his opinion that the patented and accused designs are "substantially the same when viewing

15

the designs in their entirety," (Woodring Supp. Rep. ¶ 17), is at best conclusory. Such conclusory opinions do not supply reasonable grounds for a jury to find infringement. *See HR U.S. LLC*, 2009 WL 890550 at *13.

The Court is aware of no reasonably analogous precedent denying summary judgment for non-infringement. Indeed, since *Egyptian Goddess*, as least three courts have had occasion to compare close prior art to a claimed design, and they all granted summary judgment for defendants. *See Arc'teryx Equip.*, 2008 WL 4838141 at *2-3; *Minka Lighting*, 2009 WL 691594, at *8-9; *Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046, 1051-53 (D. Ariz. 2009). This case law does not mean that summary judgment is always appropriate in a design patent case. There will be cases where, despite a body of prior art, an accused design so closely mimics a claimed design as to at least create a triable issue of infringement. But this is not such a case. Here, even as a threshold matter, evident differences exist between the AR 10/12 and the '585 patent. The close prior art draws attention to those differences, so much so that it would not be reasonable to conclude that an ordinary observer familiar with that prior art would be deceived into thinking the AR 10/12 was the "same as" the '585 patent. Summary judgment is therefore warranted. *Egyptian Goddess*, 543 F.3d at 676.

Aside from the AR 10/12 model discussed above, Sunbeam's accused AR series contains two other principal variations: the "AR 4/5" and the "AR 2004." (Def. 56.1 ¶ 64.) These models accounted for only a small portion of total AR sales. (Def. 56.1 ¶ 84 (AR 10/12 design accounted for more than 85% of total AR sales).) Whereas the 10/12 model has both a different base and a different top than the '585 patent, each of the less popular models contains only one of those unique features. The AR 4/5 has the sloping

16

base of the 10/12 model but a flat lid similar to that in the claimed design.  (Def. 56.1 ¶ 77.)  The AR 2004 has the opposite configuration: a "bullnose" base like in the claimed design, but an indented top with a partial overhang, like the 10/12.  (Def. 56.1 ¶ 82.)

Defendants submitted evidence that these models do not infringe the Sham patent, (Cagan Supp. Rep. 4, 7-8; Llewellyn Decl. Ex. 3 at 3-4; Picozza Decl. ¶¶ 12-15; Satcher Decl. ¶¶ 4-5), and in their brief, they point to the top or base of each design and argue that no ordinary observer could confuse the overall design of either model with the '585 design.  (Def. Br. at 18-19, 21.)  Plaintiff submits practically no rebuttal evidence; its expert report says only, *a fortiori*, that if the AR 10/12 infringes, the other models do as well.  (Woodring Supp. Rep. ¶ 20.)  Similarly, the section of plaintiff's brief arguing infringement does not mention the two less common models.  (Pl. Opp. 13-19.)  Thus, Wing Shing does not appear to argue that any genuine issue of material fact exists with regard to these models specifically, independent of the AR 10/12.  Even if it did so argue, plaintiff has not shown evidence sufficient to demonstrate the existence of such a factual dispute.  Summary judgment is therefore warranted with regard to these subsidiary models as well.  Fed. R. Civ. Proc. 56(e)(2) (non-movant must "set out specific facts showing a genuine issue for trial"); *see Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (requiring that a non-movant show "sufficient evidence supporting [a] claimed factual dispute" to defeat summary judgment).

## CONCLUSION

For the reasons stated above, defendants' motions for summary judgment **[65, 66]** are granted.  Simatelex's motion to dismiss for lack of personal jurisdiction **[65]** is denied as moot.  Sunbeam's counterclaim for declaratory judgment of the invalidity of the '585

patent, which Sunbeam does not mention in its motion papers, is dismissed without prejudice. *See Liquid Dynamics v. Vaughan Co.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004).

The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
       September 30, 2009

Richard J. Holwell
United States District Judge